**In re DESTRON, INC., Debtor.**

**Bankruptcy No. 83 B 7390.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 27, 1984.

Louis W. Levit, Sharon P. Riley, Levit & Mason, Ltd., Bennett Shulman, Lasky, Shulman & Goldman, Chicago, Ill., for debtor.

Robert H. King, Jr., Sonnenschein, Carlin, Nath & Rosenthal, · Chicago, Ill., for applicant.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came on to be heard upon the application of LaSalle Mortgage & Realty Co., Inc. ("LaSalle") for the entry of an order allowing its claim for damages incurred when Destron, Inc. (Debtor), rejected a certain lease of industrial property. In addition, LaSalle has applied for the allowance of its administrative claim for post-petition rent. LaSalle has further moved to modify the stay to permit LaSalle to offset a portion of its damage claim against a $15,000.00 fund in its possession, owed to debtor. The parties have submitted memoranda of law respecting the legal issues involved in LaSalle's application and motion. LaSalle's applications and motion will be denied.

Initially, the Court will address LaSalle's application to determine its claim for damages resulting from debtor's rejection of a lease of the second floor of the Skil Office Plaza located at 4801 W. Peterson Avenue, Chicago, Illinois. A copy of this lease is appended to debtor's Memorandum of Law in Response to LaSalle's Application, filed with the Court.

The term of this lease was to run from June 21, 1982 until June 20, 1987. The monthly base rent payable under the lease was $6,058.12. Additional rent for taxes and operating expenses incurred by lessor, calculated on a proportionate basis, was due from each tenant of the building, including the debtor.

The debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 13, 1983. By June 20, 1983, the debtor had moved some or most of its property out of the leasehold premises, and had notified LaSalle of its intent to quit the premises and reject the lease.

LaSalle disputes debtor's factual allegation regarding the extent to which it had vacated the leased premises on June 20, 1983. LaSalle denies debtor's assertion that it interfered with the debtor's efforts to vacate the premises on that date by denying access to the building's freight elevator. This Court entered an order on July 19, 1983, which authorized the debtor to reject the Skil Office Plaza lease.

LaSalle argues that it is entitled to an administrative claim for rent, as a matter of law, for the period commencing when debtor filed its voluntary petition (June 13, 1983) through the date when this Court authorized the rejection of the Skil Office Plaza lease (July 19, 1983). LaSalle further suggests that it is entitled to damages of $72,697.50 occasioned by the debtor's rejection of the lease, which sum amounts to one year's base rent under the rejected lease.

The debtor suggests that LaSalle's administrative claim for rent should be limited to one week's rent (June 13, 1983 to June 20, 1983), on account of LaSalle's alleged interference with debtor's attempt to vacate the building. Debtor further requests an opportunity to offer evidence with respect to LaSalle's claim for damages incurred as a result of the rejection of the lease.

The Court first observes that LaSalle's entitlement to an administrative expense for rent can be allowed only to the extent that debtor actually used and occupied the premises. This is so, regardless of the time period in which this Court formally approved the rejection of the lease. *See, In re Cardinal Export Corp.*, 30 B.R. 682, 684 (Bankr.E.D.N.Y.1983); *In re By the Sea Foods, Inc.*, 30 B.R. 262, 264 (Bankr.M.D.Fla.1983); *In re Arzola*, 11 B.R. 762, 765 (Bankr.D.P.R.1981) ("The trustee's obligation to pay rent as an administrative expense of liquidation commences with the adjudication, ... and continues until the premises are returned to the landlord"); *see also, In re Lanman*, 24 B.R. 741, 743 (Bankr.N.D.Ill.1982). As a matter of law, LaSalle's administrative claim for rent does not accrue until the Court formally authorizes the rejection of the relevant lease. Nor can the Court determine whether LaSalle's administrative expense claim terminated on June 20, 1983, absent a more complete factual presentation by these par-

ties with reference to LaSalle's alleged interference with debtor's attempt to vacate the leasehold premises on that date. LaSalle's application to determine its entitlement to an administrative claim for rent must be denied pending an evidentiary hearing or the submission of stipulated facts respecting the conduct of the parties on June 20, 1983.

▮ For similar reasons, the Court will grant debtor's request for an evidentiary hearing regarding LaSalle's application to determine the extent of its damage claim incurred as a result of the rejection of the Skil Office Plaza lease. LaSalle is not automatically entitled to a year's base rent under section 502(b)(7) of the Bankruptcy Code. Instead, the extent of its damage claim depends on certain factual issues, such as LaSalle's attempts, if any, to mitigate its damages, or whether and when LaSalle secured another tenant for the leased space. These facts too can be adduced at the evidentiary hearing to be conducted in this cause, or submitted upon stipulated facts.

The second matter presented to the Court under these pleadings concerns the extent of LaSalle's right to setoff against its postpetition claim for damages a $15,-000.00 fund which it held pursuant to the Skil Office Plaza lease. The Court would make the following observations respecting this issue at this time.

Paragraph 26 of the lease executed by these parties originally contained an express "security deposit" clause, which clause was stricken from the lease in its entirety. Paragraph A–7 of an addendum to the lease provided:

Tenant shall put in place, in lieu of a security deposit, an irrevocable Letter of Credit in the amount of Fifteen Thousand Dollars ($15,000.00), at a banking institution insured by the Federal Department Insurance Corporation, which Letter of Credit shall remain in full force and effect for a period of one (1) year from the commencement date of this Lease, which Letter of Credit, if utilized, shall be for the purpose of reimbursing Landlord for the improvements for Ten-

ant's benefit in Tenant's space to the extent of Fifteen Thousand Dollars ($15,-000.00).

In compliance with paragraph A–7 quoted above, debtor caused a $15,000.00 letter to be issued, and delivered to LaSalle as required by the lease.

However, for reasons which do not appear of record, the *res* of the $15,000.00 letter of credit was converted into a certificate of deposit with Skokie Federal Savings, held for the debtor by the owner of the Skil Office Plaza in its investment.partnership escrow account. The fund was later referred to in a letter captioned "security deposit." Nowhere, however, did the parties refer to modification of the substance of the earlier agreement pursuant to which the tenant was to put in place a letter of credit which, "if utilized shall be for the purpose of reimbursing Landlord for the improvements for Tenant's benefit in tenant's space to the extent of Fifteen Thousand Dollars ($15,000.00.)" Therefore, debtor considers the fund to constitute the *res* of an express trust. Debtor further asserts that no portion of such *"res"* may be setoff under Section 553 of the Bankruptcy Code against LaSalle's post-petition damage claim.

▮ The Court observes that an express trust is created when a settlor manifests an intent to create such a trust, identifying the subject matter of the trust, the nature of the beneficiaries' interests, and the manner in which the trust is to be performed. *Limperis v. Material Service Corp.*, 415 F.Supp. 65, 68 (N.D.Ill.1976). Here, given the wording to Addendum A–7 of the parties' lease, it appears that the clause established an express trust with reference to the $15,000.00 fund. That fund would be held in a segregated account by LaSalle as trustee for the benefit of debtor, the beneficiary. The money was to be used for a specific purpose to the benefit of debtor which was to pay for leasehold benefits specifically requested by the debtor. Although the letter of credit was converted to a certificate of deposit within a month after the parties' lease was executed, LaSalle's reference to the certificate of deposit as a "security deposit" while

retaining such funds in its principal's escrow· account, is insufficient to create a substantial ambiguity regarding the status of the fund.

■ Since it appears that the fund constituted a trust *res*, no portion of that fund may be setoff against LaSalle's postpetition damage claim under Section 553 of the Bankruptcy Code. Strictly speaking, the *res* constitutes property of the estate rather than a debt "owed to" the estate and subject to setoff. *See, Brendern Enterprises, Inc. v. Micro-Acoustics Corp., (In re Brendern Enterprises, Inc.),* 12 B.R. 458, 460 (Bankr.E.D.Pa.1981); 4 Collier on Bankruptcy, ¶ 553.04 (15th ed. 1983). The facts do not establish that the parties entered into a parol agreement to transform the fund into a security deposit, intended to secure debtor's performance of the general covenants of the lease whereby LaSalle may have some right of setoff in the fund.

WHEREFORE, IT IS HEREBY ORDERED that LaSalle's motion to offset a portion of its damage claim against the fund is denied. It is further ordered that a hearing on said claim is set for August 24, 1984 at 10:30 a.m.